IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LOUIE CARABAJAL,**

        Plaintiff,

vs.                                                Civ. No. 04-721 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed December 17, 2004. Docket No. 10. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is granted.

**I. PROCEDURAL RECORD**

Plaintiff, Louie Carabajal, filed an application for Social Security disability insurance benefits and Supplemental Security Income benefits on February 10, 1999. Tr. 72, 233. His application was denied at the initial and reconsideration level.

The ALJ conducted a hearing on February 7, 2001. At the hearing, Plaintiff was represented

by counsel. On June 6, 2001, the ALJ issued a partially favorable decision. The ALJ found that prior to November 9, 2000, Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of medium work activity, excluding work that required frequent bending, depth perception, visual acuity for distant objects, or the vision necessary to avoid hazards. Tr. 22. In addition, the ALJ found that after November 9, 2000, Plaintiff was disabled.

On May 21, 2004, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. Tr. 5. The Plaintiff subsequently filed his Complaint for judicial review of the ALJ's decision on June 25, 2004.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1486 (1993). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific

sequence in analyzing disability applications. 20 C.F.R. § 404.1520(a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1) he is not engaged in substantial gainful employment; 2) he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3) his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id*.

### III.  MEDICAL HISTORY

Plaintiff was born in 1941. He has an eleventh-grade education and worked for many years as a house painter.

Plaintiff's physical condition is not at issue. His medical history reveals the following. Plaintiff lost his right eye when he was a child. He wears a prosthesis. Vision in his left eye is impaired. Tr. 164. He had laparoscopic surgery for a perforated duodenal ulcer and to repair an umbilical hernia. Tr. 119, 162. He had left shoulder pain after a motor vehicle accident in October of 1998. Tr. 115. He has high blood pressure. Tr. 144.

Prior to November 9, 2000, the date the ALJ found that Plaintiff was disabled, there are few records regarding Plaintiff's mental impairment. There are records from the "Substance Abuse Center" from April of 1997 to March of 1999 during which time he was receiving methadone

treatment.  On June 27, 1998, his counselor noted that Plaintiff said that he was "still doing good" and was "working and keeping busy."  Tr. 139.  On October 26, 1999, Plaintiff went to the UNM Family Health Academy Clinic to have his blood pressure checked.  Tr. 174.  The note of that visit states that Plaintiff had been on Zoloft[1] for two months.  *Id.*  When he returned on November 17, 1999, his physician wrote that he should continue on Zoloft.  On August 15, 2000, Plaintiff went to the UNM Mental Health Center where he was prescribed Prozac.  His condition was described as stable.  Tr. 194.

On November 6, 2000, Plaintiff saw a counselor at the UNM Mental Health Center.  Tr. 228.  He reported that he was suicidal.  He stated his grandson was molested by a relative and he felt responsible.  *Id.*  On November 9, 2000, Plaintiff was admitted to UNM's Mental Health Center "on a voluntary basis for stabilization of his suicidal and homicidal ideation."  Tr. 182.  It is noted in the admission history that Plaitniff had two prior suicide attempts in 1975 and 1976.  Plaintiff's Global Assessment of Functioning ("GAF") on admission was 25.[2]  Plaintiff's suicidal and homicidal ideation resolved and he was discharged on November 14, 2000.  His GAF upon discharge was 45.[3]  Tr. 181.

---

[1]Zoloft (sertraline hydrocloride) is indicated for the treatment of major depressive disorder.  *Physician's Desk Reference*, 59th ed. (2005).

[2]The GAF is a scale that considers psychological, social, and occupational functioning.  Individuals with a GAF between 21 and 30 experience behavior that is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or have an inability to function in almost all areas.  *Diagnostic & Statistical Manual of Mental Disorders*, 4th ed. (1994), p.32.

[3]Individuals with a GAF between 41 and 50 experience serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairments in social, occupational, or school functioning.  *Id.*

A physician from the Center for Alcoholism, Substance Abuse & Addictions ("CASAA") wrote a letter on February 4, 2001 stating that the Plaintiff "presently suffers from chronic depression, which has existed for at least the past two years." Tr. 199. The letter further states that Plaintiff's "symptoms have resulted in restriction of daily actives (sic) and difficulty in maintaining concentration or resulting in lack of gainful employment." *Id.*

On April 5, 2001, Plaintiff underwent a psychiatric evaluation by Dr. Rene Gonzales. Dr. Gonzales diagnosed him with major depression. Tr. 203. Dr. Gonzales opined that she does "not think this individual may be able to hold a job at this time because his depression seems to be affecting his life to the point that he may not be able to hold a job but it seems that his present treatment may need to be readjusted to help him with the depression, so he will be able to perform a job." Tr. 205.

Plaintiff again was admitted to the UNM Mental Health Center on May 16, 2001. He was "dropped off" by his wife. Tr. 208. He was suffering from methadone withdrawal. Tr. 214. He was discharged on May 21, 2001. On discharge, Plaintiff's GAF was at 40. Tr. 208.

## IV. DISCUSSION

The issue in this matter is the onset date of Plaintiff's mental impairment. The ALJ determined that Plaintiff was disabled as of November 9, 2000. Plaintiff stated in his application that he was disabled as of November 20, 1997. Plaintiff asserts that the record does not support the ALJ's onset date of November 9, 2000.

*Onset date*.[4]

Plaintiff asserts that the ALJ erred in not consulting a medical advisor in determining the onset date of his mental disability.  Defendant asserts that consulting with a medical advisor was not required because the evidence did not reveal "significant medical or psychological problems, except Methadone addiction, from 1997, the year [Plaintiff] alleges he became disabled, through October 2000."  Tr. 16.  The substantial evidence in the record does not support Defendant's position.

Factors relevant to determining an onset date include the Plaintiff's allegations of an onset date and the Plaintiff's work history, but "the medical evidence serves as the primary element in the onset determination."  SSR 83-20.  "The established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record."  *Id*.  When an onset date must be inferred the decision must have a "legitimate medical basis" and the ALJ "should call on the services of a medical advisor at the hearing."  *SSR 83-20; Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995).  However, "a medical advisor need be called only if the medical evidence of onset is ambiguous."[5] *Id*.

SR 83-20 further states that "the day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date."  Plaintiff asserts that he became disabled November 20, 1997.  Plaintiff alleges that he has been unable to work since that

---

[4] "The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations."  SSR 83-20, 1983 SSR LEXIS 25, 1983 WL 31249 (1983).

[5] The definition of ambiguous is "Of words or other significant indications:  Admitting more than one interpretation, or explanation; of double meaning, or of several possible meanings; equivocal.  *The Oxford English Dictionary*, 2nd ed. (1989).

date. There is evidence in the record that Plaintiff continued to work after November 20, 1997. However, this evidence shows that Plaintiff only worked until the middle of 1998, not until November of 2000, the date the ALJ found Plaintiff disabled. Tr. 139. The ALJ erred in not addressing this factor in reaching his decision. Tr. 14-23; SSR 83-20.

The medical evidence, Plaintiff's psychiatric history, is ambiguous as to when Plaintiff's depression became disabling. Most of he records prior to November of 2000 are from the "Substance Abuse Center" where Plaintiff received methadone treatment. However, the medical record indicates that Plaintiff was diagnosed with depression in 1975. Tr. 190. The record also notes that Plaintiff has a "history of two prior suicide attempts in '75 when he cut his wrists and '76 when he overdoes on phenobarbital requiring hospitalization." *Id.* In addition, there are records from the UNM Family Health Academy Clinic noting that in October and November of 1999 Plaintiff was on Zoloft. In February of 2000, Plaintiff dosage of Zoloft was increased from 50 to 200 milligrams twice per day. Tr. 170. In August of 2000, Plaintiff was prescribed Prozac. In addition, on November 6, 2000, prior to the ALJ's determination of Plaintiff's onset date, he saw a counselor at the UNM Mental Health Center and reported that he was suicidal. He stated his grandson was molested by a relative and he felt responsible. This was the precipitating event which caused his admittance to UNM's Mental Health Center on November 9, 2000. Furthermore, Patrick Abbott, M.D., Plaintiff treating psychiatrist, stated in February of 2001 that he had been treating Plaintiff since November of 2000 and that the Plaintiff and suffered from chronic depression at least for the past two years. Tr. 199. Dr. Abbott further stated that his "symptoms have resulted in restriction of daily activities and difficulty in maintaining concentration or resulting in lack of gainful employment." *Id.*

For the foregoing reasons the Court finds that the onset date of Plaintiff's mental disability is ambiguous and thus it was error for the ALJ not to consult a medical advisor.

*Lay witness testimony.*

Plaintiff asserts that the ALJ erred in not considering the testimony of Ms. Geri Sanders, ("Sanders") an investigator with the Albuquerque Police Department. Sanders testified she had known the Plaintiff since 1997 and had met the him when she was doing an investigation concerning his grandson. Tr. 290. She testified that:

> In about the last, I'd say, year, year and a half or so, I've observed Louie's emotion and physical health deteriorate. When I first met Louie...he was very active with his grandson, going to the park, just a very active guy. then I noticed a decline in his emotional and physical well being. I noticed that he would just sit around. I noticed a lot of depression.
> Tr. 271.

In his decision, the ALJ notes that Sanders testified. The decision however does not reflect whether the ALJ considered this testimony in making his decision.

The regulations state that non-medical sources may be used as evidence to "show the severity of ....impairments and how it affects [one's] ability to work." 20 C.F.R. §404.1513(d)(4). When an onset date is inferred SSR 83-20 states that "[i]nformation may be obtained from family members, friends, and former employers ...to furnish additional evidence regarding the course of the individuals' condition." The Tenth Circuit requires the ALJ to consider lay testimony. In this matter, the ALJ did not discuss Sanders' testimony and it is not clear that the ALJ considered it. *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996). On remand, the ALJ must consider the testimony of Sanders.

*Step two.*

Finally, Plaintiff asserts that the ALJ erred in finding that Plaintiff's mental impairment was not severe until November 9, 2000. A claim may be denied at step two only if an impairment does not significantly limit Plaintiff's physical and/or mental ability to do basic work activities. *20 C.F.R. §§ 404.1521, 416.921.* Only "de minimis" proof of the impairment is required. *Williamson v. Barnhart*, 350 F.3d 1097, 1099 (10th Cir. 2003). As discussed above, there is testimony that Plaintiff had a mental impairment prior to November 9, 2000. As this case will be remanded, the Court does not need to decide if the ALJ erred at step two. However, the Court will order the ALJ to re-examine this issue in light of the medical advisor's opinion.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision is granted for proceedings consistent with this opinion.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**
**(sitting by designation)**